# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| RICHARD CONWAY, | : Case No. 3:19-CV-379 |
| Plaintiff, | : Magistrate Judge Sharon L. Ovington |
| | : (by full consent of the parties) |
| vs. | : |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

## DECISION AND ENTRY

## I. INTRODUCTION

Plaintiff Richard Conway brings this case challenging the Social Security Administration's denial of his application for Disability Insurance Benefits and a period of disability benefits. He applied for benefits in September 2016. The claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Stuart Adkins concluded that he was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed this action. Plaintiff seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 8), the Commissioner's Memorandum in Opposition (Doc. No. 10), and the administrative record (Doc. No. 6).

## II. BACKGROUND

Plaintiff asserts that he has been under a disability since May 31, 2014. At that time, he was fifty-nine years old. Accordingly, he was considered a "person of advanced age" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(e). Plaintiff has a high school education.

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. No. 6, PageID 44-55), Plaintiff's Statement of Errors (Doc. No. 8), and the Commissioner's Memorandum in Opposition (Doc. No. 10). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as the Social Security Act defines it—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e.,

"substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241(citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence,

'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. THE ALJ'S DECISION

As noted previously, it fell to the Administrative Law Judge to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful activity since May 31, 2014, the alleged disability onset date.

Step 2: Plaintiff has the following severe impairments: Obesity, Degenerative Disc Disease (DDD) of the Lumbar Spine with Radiculopathy, Bilateral Degenerative Joint Disease (DJD) of the Shoulders, Chronic Pain Syndrome (CPS), Atrial Fibrillation (Afib), Hypertension (HTN), Coronary Artery Disease (CAD), and Diverticulitis.

Step 3: Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to following limitations: (1) occasionally reach in all directions bilaterally; and (2) occasionally climb ladders, ropes and scaffolds, ramps and stairs, balance, stoop, kneel, crouch, and crawl."

> Step 4: Plaintiff is capable of performing his past relevant work as a security guard.

(Doc. No. 6, PageID 47-55). These main findings led the ALJ to ultimately conclude that Plaintiff has not been under a benefits-qualifying disability. *Id.* at 55.

## V. DISCUSSION

Plaintiff asserts that error occurred at Step Four when he was found capable of performing his past relevant work as a security guard as he actually performed it and as it is performed in the national economy. In contesting this finding, Plaintiff narrowly argues that no specific findings were made as to his ability to withstand the physical and mental demands of his past work and that the record does support a finding that he can perform his past work as a security guard. (Doc. No. 8, PageID 884).

The primary focus of Plaintiff's contentions pertains to his severe impairment of bilateral degenerative joint disease of the shoulders. To accommodate this impairment, Plaintiff was limited to occasionally reaching in all directions bilaterally. (Doc. No. 6, PageID 51). This limitation notwithstanding, Plaintiff argues that his severe shoulder impairment prevents him from performing his past work, which is classified as a semi-skilled and light exertional level job. (Doc. No. 6, PageID 115).

A five-step sequential evaluation process is utilized in determining whether an individual is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). The burden is on the claimant through Step Four, and at Step Four, the claimant must prove "the

existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work…" *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). "To satisfy this burden, a claimant must show that he or she cannot perform his or her past relevant work as 'actually performed' *and* as 'generally required by employers throughout the national economy.'" *Smallwood v. Comm'r of Soc. Sec.*, No. 2:16-cv-1166, 2017 WL 4944522, at *6 (S.D. Ohio Jan. 22, 2018) (Vascura, M.J.), report and recommendation, adopted, 2018 WL 1512907, at *1 (S.D. Ohio Mar. 27, 2018) (Sargus, D.J.) (emphasis added) (citing SSR 82-61, 1982 WL 31387, at *2 (1982); *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002).

In his Statement of Errors, Plaintiff argues that the failure to make an informed comparison between the actual duties of his past work and his severe impairments necessitates a finding that the decision is unsupported by substantial evidence. (Doc. No. 8, PageID 887). To be clear, Plaintiff does not seemingly challenge the residual functional capacity assessment, and instead focuses on the determination that he is able to perform his past work as a security guard. As evidence that his severe impairments would interfere with his ability to perform his past work, Plaintiff emphasizes that he testified he could only lift a gallon of milk with his right arm and that he needed help out of the bathtub on one occasion as he was unable to lift himself out. (Doc. No. 8, PageID 886). He further points to the fact that sweeping and mopping exacerbate his back and shoulder pain. *Id.*

This evidence, however, does not demonstrate that Plaintiff is incapable of performing his past work as it was actually performed. As to his actual duties, Plaintiff indicated that his security guard position did not require any lifting or carrying and required "very little" reaching. (Doc. No. 6, PageID 300). In fact, the record reflects that Plaintiff "mostly sat in [his] car" and sat during "most of the shift." *Id.* His work did not involve any climbing, stooping, kneeling, crouching, crawling, or handling, grabbing or grasping big objects. *Id.* Plaintiff walked the perimeter once per hour. (Doc. No. 8, PageID 886).

In arguing that he cannot withstand the physical demands of his past work due to his shoulder impairment, Plaintiff fails to resolve the inconsistencies between this assertion and his own categorizations of his past work as it was actually performed. Additionally, Plaintiff declines to mention that his past work as actually performed did not require any lifting or carrying and only "very little" reaching. Instead, he focuses on the fact that he was required to walk the perimeter once per hour, which seemingly is a duty that would remain unaffected by his severe shoulder impairment. Moreover, Plaintiff has not attempted to argue that the "very little" reaching that was required in his past work as a security guard would exceed his limitation of "occasionally" reaching in all directions bilaterally as set forth in the residual functional capacity assessment. For these reasons, Plaintiff has failed to satisfy his burden at Step Four in demonstrating that he cannot perform his past relevant work as a security guard as it was actually performed.

Plaintiff has also not satisfied his burden as to his ability to perform his past work as it is generally performed in the national economy. In alleging that he is unable to perform his past work as it is generally performed, Plaintiff asserts that his severe shoulder impairment "would impact the core duties of a security guard that may require such activities as arresting trespassers and walking a dog on a leash." (Doc. No. 8, PageID 886). Plaintiff cites to the Dictionary of Occupational Titles, which indicates that a security guard *may* be "deputized to arrest trespassers…[and] *may* patrol site with guard dog on leash." (Doc. No. 8, PageID 886) (citing Security Guard, DICOT 372.667-034, 1991 WL 673100) (emphasis added). The Commissioner maintains that these specific duties are not "core duties" as they are not an essential part of the position. (Doc. No. 10, PageID 905).

A security guard "[g]uards industrial or commercial property against fire, theft, vandalism, and illegal entry." *See* Security Guard, DICOT 372.667-034, 1991 WL 673100. This is achieved through performance of any combination of the following duties:

> Patrols, periodically, buildings and grounds of industrial plant or commercial establishment, docks, logging camp area, or work site. Examines doors, windows, and gates to determine that they are secure. Warns violators of rule infractions, such as loitering, smoking, or carrying forbidden articles, and apprehends or expels miscreants. Inspects equipment and machinery to ascertain if tampering has occurred. Watches for and reports irregularities, such as fire hazards, leaking water pipes, and security doors left unlocked. Observes departing personnel to guard against theft of company property. Sounds alarm or calls police or fire department by telephone in case of fire or presence of unauthorized persons. Permits authorized persons to enter property.

*Id.* In addition to these duties, the DOT also sets forth that a security guard:

> May register at watch stations to record time of inspection trips. May record data, such as property damage, unusual occurrences, and malfunctioning of machinery or equipment, for use of supervisory staff. May perform janitorial duties and set thermostatic controls to maintain specified temperature in buildings or cold storage rooms. May tend furnace or boiler. May be deputized to arrest trespassers. May regulate vehicle and pedestrian traffic at plant entrance to maintain orderly flow. May patrol site with guard dog on leash.

*Id.* Other duties, which are dependent on industry type, are also included in the DOT.

Plaintiff argues that the decision is unsupported by substantial evidence because there was no direct comparison between each of the physical and mental demands of his past work, i.e. the aforementioned duties, and his limitations. The undersigned disagrees. Plaintiff fails to account for the extensive evaluation of the medical evidence of record that immediately precedes the determination as to Plaintiff's ability to perform his past work. This evaluation directly aided the residual functional capacity assessment, which Plaintiff does not appear to contest, and did not need repeating in evaluating whether Plaintiff was capable of performing his past work. Likewise, Plaintiff does not account for the vocational expert's testimony as to his ability to perform his past work.

"Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Varley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987) (citations omitted) (internal quotations omitted). As to a claimant's ability to perform past work, "[a] vocational expert [] may offer expert

9

opinion testimony in response to a hypothetical question about whether a person with the physical and mental demands imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).

In the present case, the hypothetical posed to the vocational expert accurately portrayed Plaintiff's physical and mental impairments, and Plaintiff does not contend otherwise. At the hearing, the vocational expert testified that an individual like Plaintiff was capable of performing Plaintiff's past relevant work as a security guard, and the ALJ subsequently relied on the vocational expert's testimony at Step Four. (Doc. No. 6, PageID 115-19). It was proper for the ALJ to rely upon the vocational expert's testimony as to Plaintiff's ability to perform his past work as a security guard, and such reliance constitutes substantial evidence. *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work, given his RFC").

Plaintiff does not allege that error occurred as to the vocational expert's testimony or that the vocational expert's testimony was in conflict with any of the information set forth in the DOT. And to the extent that any conflicts were to exist in this regard, Plaintiff's counsel was required to bring such conflicts to light at the administrative hearing.

Indeed, "the Social Security Administration imposes an affirmative duty on ALJs to ask VEs if this evidence that they have provided 'conflicts with the information provided

in the DOT.'" *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (citing SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000)). When compliance with this duty is achieved, "the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p, 2000 SSR LEXIS 8." *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009). Rather, this "obligation falls to the [claimant's] counsel, who [has] the opportunity to cross-examine the VE and bring out any conflicts with the DOT." *Id*; *see also Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) ("Nothing in SSR 00-4p, 2000 SSR LEXIS 8 places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct…Because [the claimant's counsel] did not bring the conflict to the attention of the ALJ, the ALJ did not need to explain how the conflict was resolved").

That affirmative duty was satisfied, and the obligation fell to Plaintiff's counsel. Plaintiff's counsel had the opportunity to cross-examine the vocational expert, and counsel briefly questioned her at the administrative hearing. (Doc. No. 6, PageID 118). In doing so, Plaintiff's counsel did not identify or otherwise allege any conflicts or inconsistencies as to the vocational expert's testimony regarding Plaintiff's ability to perform his past work as a security guard. Because no conflicts were identified, the ALJ rightfully relied on the vocational expert's testimony in response to a hypothetical that properly captured Plaintiff's physical and mental abilities. Any argument to the contrary is unpersuasive.

Furthermore, as recognized above, a security guard *may* be deputized to arrest trespassers and *may* patrol site with guard dog on leash. It is clear that the use of the term "may" is intentional because the DOT initially lists specific duties without this qualifier, which suggests that those duties are essential or core duties, and that the other duties are not routinely required such that they are non-essential. Indeed, Plaintiff does not allege that he was required to patrol the premises with a guard dog on a leash in his past work. Likewise, Plaintiff does not assert that he ever arrested or apprehended any trespassers. This further supports the finding that the duties a security guard *may* perform are not duties that a security guard would be expected to perform in all circumstances.

The evidence of record does not demonstrate that Plaintiff would be categorically prevented from performing such duties to the extent that may be required. Plaintiff asserts that he can only lift a gallon of milk with his right arm, and that he needed assistance to get out of the bathtub on one occasion. He also states that sweeping and mopping exacerbate his back and shoulder pain. Yet, the record reflects that, during the relevant period, Plaintiff reported to his physician that he "works as a laborer carrying rocks that are used for masonry and a second job chopping wood." (Doc. No. 6, PageID 695). Plaintiff also used a chainsaw to cut down tree limbs, although such activity caused "some shoulder pain." *Id.* at 713. These activities suggest that Plaintiff's shoulder impairment does not prevent him from performing all activities that require use of that extremity.

Looking to Plaintiff's residual functional capacity, Plaintiff was limited to "light work," meaning that he can lift twenty pounds occasionally, and ten pounds frequently. (Doc. No. 6, PageID 52). He was also limited to only "occasional" reaching to further accommodate his severe shoulder impairment. *Id.* "[O]ccasional" is something that "occur[s] from very little to up to one-third of the time." *See* Soc. Sec. Ruling 83-10, 1983 WL 31251. Plaintiff does not openly criticize these limitations or otherwise assert that this aspect of his residual functional capacity does not accommodate his severe impairments. Likewise, Plaintiff does not demonstrate that he would be required to perform duties such as arresting trespassers and walking a guard dog on a leash so frequently as to exceed his limitation to "occasional" reaching in all directions bilaterally.

Thus, the Step Four determination is supported by substantial evidence, and Plaintiff has failed to satisfy his burden of proving that his is unable to perform his past work as a security guard both as it was actually performed and as it is generally performed in the national economy. Accordingly, Plaintiff's Statement of Errors is without merit.

**IT IS THEREFORE ORDERED THAT:**

1. The Commissioner's non-disability determination be **AFFIRMED**; and
2. The case be terminated on the docket of this Court.

April 29, 2021                                *s/Sharon L. Ovington*
                                                                       Sharon L. Ovington
                                                                       United States Magistrate Judge